FERDINAND ROEHL v. H. CLAY PLEASANTS, ADMINISTRATOR.

Where an administrator sold land to which there was no other title than the location of a rejected and fraudulent certificate, the plea of failure of consideration ought to have been sustained. (Paschal's Dig., Art. 227, Note 288.)

The principle of *caveat emptor* in judicial sales has no application to such a case. It was simply a question of justice, where the estate parted with nothing and the purchaser got nothing. (Paschal's Dig., Art. 1333, Note 499.)

Neither fraud nor mistake, the suppression of truth nor the suggestion of a falsehood, were matters of inquiry. The law having made it penal to deal in such certificates, to locate them, or survey them, and the constitution having perpetually barred them as claims against the government, the courts cannot respect the sales of them by any person under any proceeding or for any purpose. (Paschal's Dig., p. 65, secs. 20–21, Note 197; p. 71, Art. 11, secs. 1–2, Note 208.)

ERROR from De Witt. The case was tried before Hon. J. J. HOLT, one of the district judges.

The suit was upon a note made on the 25th February, 1861, by the defendants, payable twelve months after date to the plaintiff below, as administrator of John York's estate, for $295 20, and a mortgage upon a tract of land purchased at administrator's sale, which was the consideration for the note. The answer set up that nothing was sold by the administrator; that the claim of the estate was a mere location upon the land by virtue of an unrecommended or fraudulent certificate; and that therefore the consideration had wholly and entirely failed.

The plaintiff put in special exceptions to the plea, which seemed not to have been acted upon by the court; but the whole case, of law and of fact, was submitted to the judge, who rendered a judgment for the amount of the note, and a decree foreclosing the mortgage upon the land.

The facts proved were the note and mortgage, and evidence of the administrator's sale, the location and field-notes, and that the certificate under which the survey was

made had never been recommended as a genuine certificate by the board appointed to detect fraudulent land certificates. There was some proof that the defendant was a German, who spoke little of the English language, but that was deemed immaterial. The question was as to whether the sale of such a spurious and valueless certificate by an administrator was sufficient consideration to support the note given at the administrator's sale ?

*Glass & Callender*, for the appellant, cited the statutes to show that such fraudulent certificates were not only void, but that it was a crime to locate them or trade in them, and the constitution of 1845 shows that it never could be made valid. Also the case of Crayton v. Munger, 9 Tex., 285, and Coombs v. Lane, 17 Tex., 280, to show that the purchaser at an administrator's sale might plead such a defense.

No brief for the appellee has been furnished to the *Reporter*.

LINDSAY, J.—The appellee, who was the administrator, *de bonis non*, &c., of the estate of John York, deceased, brought suit against the appellant and his sureties, on a promissory note executed by them to the former administrator of said estate of John York, for the purchase of a tract of land—one-third of a league—which was sold by the said former administrator as part of the estate of his intestate. The land was sold by the administrator under a decretal order of the probate court of DeWitt county. The defense set up by appellant against a recovery on said note was, that the said administrator sold said land—one-third of a league—as land which had been granted to one John W. Hall, selling, at said sale, "all right, title, and interest which said York's estate had to said land," when in fact and in truth the said estate had no right, title, or interest in said land at all, neither at the time of sale nor

at any other time. The answer of the defendant alleges that there was no "grant" ever made for said land, but that the said one-third league was located and surveyed by virtue of a land certificate purporting to have issued to said Hall on the 3d of February, 1838, by the board of land commissioners of Washington county, for R. E. Williams, administrator of John York deceased, who was assignee of John Hall, on the 17th day of October, 1855. It appears also that the said certificate, No. 72, was an unrecommended one; in other words, was rejected by the board of land commissioners appointed under the act to detect fraudulent land certificates, which took effect on the 16th day of March, 1840, and was never subsequently established by any proceeding in the district courts of the country, as was authorized by law up to the 1st day of July, 1847, when the constitutional bar was interposed, and thenceforth all such certificates were declared absolutely null and void. The proof shows that a survey was first made upon said certificate in 1855 for one-half league only, and on 10th December, 1860, a corrected survey was made upon the certificate for one-third of a league.

The sole question which is presented for our consideration upon the record is, whether a location and survey founded upon such a certificate can be the subject of sale by the administrator. The board of commissioners for the detection of fraudulent certificates had never recommended this certificate, nor had it been established by any proceeding in the district court to give it validity; and the constitution had declared that all such certificates, from and after the 1st day of July, 1847, should be forever null and void. The bidder, then, at the administrator's sale, took nothing by his purchase, and the note which he executed to the administrator was without any consideration whatever. The certificate was worthless; no land was granted to the holder by the republic or the state, and nothing could pass by the sale. Fraud or mistake therefore, the suppression

of the truth or the suggestion of a falsehood by the administrator, need not be inquired into in the adjudication of this case. It is simply an inquiry into what is just and right between man and man, where neither law nor equity imperatively constrains the judgment. The purchaser took nothing by his purchase, and neither will the vendor nor the estate of his intestate lose anything by his failure to collect the money stipulated to be paid at this pretended sale of property, which was not in *esse* at the time of such pretended sale. The principle of *caveat emptor*, in judicial sales, is wholly inapplicable here. Neither the case of Edmonson v. Hart, 9 Tex., 554; of Williams v. McDonald, 13 Tex., 322; or of Walton v. Reager, 20 Tex., 108, pushes the doctrine of *caveat emptor* so far as to embrace a case like the present, though the latter case presses it to the utmost verge of legal or equitable toleration. Besides, if fraud, mistake, and misrepresentation were legitimate subjects of inquiry in the investigation of the merits of this case, sufficient facts are shown in the record to warrant us, upon the authority of the cases of Crayton v. Munger, 9 Tex., 285, and of Coombs v. Lane, 17 Tex., 280, to reverse the judgment of the court below.

The facts also show that the land attempted to be sold to the appellant was located and surveyed in contravention of the constitution and laws, and in defiance of a grave and serious penalty denounced by the law against all surveyors who should locate such certificates or survey land for such holders. And now, for that law to give its judicial sanction to any trafficking in the subject-matter, originating in a wanton violation of its own positive interdict, is a presumption too preposterous to be indulged for one moment. The contract of sale by the administrator was against public policy, illegal, and void, and therefore not enforceable in a court of justice. The judgment of the court below is consequently reversed and remanded to that court, with nstructions to enter up a judgment in conformity with this

opinion, canceling said contract of sale, as well as the deed of the administrator, the mortgage of the appellant, and the note sued on, and restoring the parties to the position in which they stood before the sale and purchase.

Reversed and remanded.